UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. BIESTEK,

        Plaintiff,                  CIVIL ACTION NO. 16-cv-10422

        v.                       DISTRICT JUDGE LINDA V. PARKER

COMMISSIONER OF             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

REPORT AND RECOMMENDATION

    Plaintiff Michael J. Biestek seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 22) and Defendant's Motion for Summary Judgment (docket no. 23).  Plaintiff has also filed a reply brief in support of his Motion for Summary Judgment.  (Docket no. 25.)  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 13.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.    RECOMMENDATION

    For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 22) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 23) be **GRANTED**.

## II.      PROCEDURAL HISTORY

The undersigned adopts and incorporates by reference the procedural history of this matter set forth in the ALJ's decision.  (TR 721-22.)

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

In his brief, Plaintiff sets forth the procedural history of this matter and a brief statement of the case, informing that his medical records are incorporated by reference in the argument portion of his brief.  (Docket no. 22 at 2-3.)  The ALJ summarized Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in her decision.  (TR 724-38.)  Defendant adopts the ALJ's recitation of the facts.  (Docket no. 23 at 5.)  There are no material inconsistencies between the ALJ's summary of the facts and the record; therefore, the undersigned will incorporate the summary by reference.  Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and that he had not engaged in substantial gainful activity since the alleged onset date.  (TR 724.)  The ALJ also found that Plaintiff suffered from the following severe impairments: degenerative disc disease, hepatitis C, asthma, and depression, but his impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 724-27.)  The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [he] requires work in a relatively clean air work environment, such as no fumes, gases, concentrated dust or other pollutants; no climbing of ladders, ropes, or scaffolds; no climbing of

2

> ramps or stairs; no crawling; occasional stooping, crouching or kneeling; occasional flexion, extension, or rotation of the neck; no operation at hazardous heights or around dangerous machinery; no operation in temperature extremes; no work in food service or medical assistance areas; requires a sit/stand option at will, but not to exceed 30 minutes at a time in either position; is limited to simple, routine tasks such as those jobs at the SVP 1 or 2 level due to pain, fatigue, and depression causing occasional limitations in ability to maintain concentration for extended periods, but not off task for more than 10% of the workday, as well as occasional limitations in ability to carry out detailed instructions; requires use of a can for prolonged ambulation; and is limited to brief and superficial interaction (i.e. infrequent and not very involved) with the public, coworkers, and supervisors.

(TR 727-36.)  Subsequently, the ALJ noted that prior to the established disability onset date, Plaintiff was a younger individual age 45-49, but his age category changed to that of an individual closely approaching advanced age on May 4, 2013.  (TR 737.)  Then, in reliance on the VE's testimony, the ALJ determined that prior to May 4, 2013, Plaintiff was capable of performing a significant number of jobs in the national economy, but beginning on May 4, 2013, there were no such jobs that Plaintiff could perform.  (TR 737-38.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time prior to May 4, 2013, but became disabled on that date and continued to be disabled through the date of the decision.  (TR 722-23, 738-39.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

4

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

C.     **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the

5

decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits or remanded for further proceedings under sentence four because (1) the ALJ erred in evaluating Listing 1.04; (2) the ALJ erred in evaluating the medical opinion evidence; (3) the ALJ erred in evaluating Plaintiff's restrictions in concentration, persistence, or pace; (4) the ALJ's credibility assessment is erroneous; and (5) the ALJ's step-five determination is not supported by substantial evidence. (Docket no. 22.)

## 1.    *The ALJ's Assessment of Plaintiff's Impairments under Listing 1.04*

Plaintiff challenges the ALJ's determination at step three of the sequential evaluation process that Plaintiff's impairments do not meet or medically equal Listing 1.04.  (Docket no. 22 at 3-7.)  At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."  *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).  A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment.  *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th

6

Cir. 2009).  "Moreover, all of the criteria must be met concurrently for a period of twelve continuous months." *McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, at *8 (E.D. Mich. June 26, 2015) (citing 20 C.F.R. § 404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation")). It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

Under Listing 1.04, disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) are defined as those:

> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> >
> > C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. For a disorder of the spine to meet Listing 1.04A, "the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months." Social Security Acquiescence Ruling (AR) 15-1(4), 80 FR 57418-02, 2015 WL 5564523, at *57420 (Sept. 23, 2015) (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4)). Stated differently, when the paragraph A criteria "are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id.*

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (TR 725.) With regard to Listing 1.04, the ALJ explained:

> The degenerative disc disease does not meet or medically equal listing 1.04 because the claimant lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or spinal stenosis resulting in pseudoclaudication. This finding is supported by the opinion of medical expert, Dr. Barnes, who testified that, in his opinion, the claimant did not meet or equal a medical listing. The undersigned gives significant weight to this opinion from Dr. Barnes, as it is consistent with the evidence in the record. Namely, in supporting this opinion, Dr. Barnes indicated that positive straight leg raising was not found on most of the examinations, as will be discussed in more detail below. Furthermore, Dr. Barnes noted that the physical findings of numbness, reflex changes, and atrophy were not consistently present over a 12-month period, consistent with the medical records. In addition, the MRI findings in the record, as discussed below, reflect only mild-to-moderate degenerative changes with no more than mild stenosis (Exhibits B2F/9, B12F/6, B22F/45, and B30F/22).
>
> In making this finding regarding listing 1.04, the undersigned give [sic] little weight to the medical opinion of Alexander J. Ghanayem, M.D., who opined that the claimant "met and exceeded the criteria set forth for disability related to disorders of the spine as listed in section 1.04" (Exhibit B43F). Dr. Ghanayem noted "in 2005 he had significant lumbar spine disc disease"; however, the radiologist noted in August 2005 that the claimant had "mild degenerative disc disease and facet osteoarthritis" (Exhibit B38F/3). The doctor then noted that, by December 2009, the claimant's lumbar spine "showed significant and diffuse evidence of lumbar disc disease"; yet, the MRI study dated December 05, 2009,

and re-interpreted on January 19, 2010 revealed no more than moderate abnormalities with no evidence of spinal canal stenosis, neural foramina stenosis, or disc protrusion (Exhibits B2F/9 and B12F/6). Mild-to-moderate degenerative changes were seen on a 2013 lumbar spine MRI, and an October 2014 MRI revealed only mild central canal stenosis (Exhibits B22F/45 and B30F/22). Dr. Ghanayem's opinion is contrary to the objective findings of multiple radiologists who reviewed the claimant's images. The undersigned also notes that Dr. Ghanayem only reviewed the claimant's medical records and never had the opportunity to examine, or even meet with and question, the claimant (Exhibit B43F).

(TR 725.)

Plaintiff argues that the ALJ erred in adopting the opinion of Dr. Barnes over that of Dr. Ghanayem. (Docket no. 22 at 4.) Plaintiff also argues that even if he cannot demonstrate that that he meets Listing 1.04A, Dr. Ghanayem testified that Plaintiff's impairments "more than equaled" the Listing. (Docket no. 25 at 1.) "However, the ALJ has the right to resolve conflicting respectable medical opinions." *Morreale v. Heckler*, 595 F. Supp. 907, 910 (E.D. Mich. 1984) (citing *LeMaster v. Weinberger,* 533 F.2d 337, 349 (6th Cir. 1976); *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir. 1971)). *See also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (It is not the court's role to resolve conflicting evidence in the record.). While the ALJ's notation that Dr. Ghanayem did not personally examine Plaintiff is questionable, particularly where Dr. Barnes also did not personally examine Plaintiff, it does not constitute a significant legal error requiring remand. Here, there is substantial evidence in the record that supports the ALJ's decision that Plaintiff did not meet or medically equal Listing 1.04, including the MRI reports, which the ALJ accurately cited as revealing only mild-to moderate degenerative changes; the objective medical evidence revealing the lack of a simultaneous presence of the paragraph A criteria (TR 245-46, 250, 252, 255, 285, 328-330, 410, 412, 414, 469, 486, 590, 636, 639, 1554, 1570, 1609, 1617, 1914, 1922-23, 1931, and 1957); and Dr. Barnes's opinion,

upon which the ALJ was entitled to rely.  Although there is also record evidence, including Dr. Ghanayem's opinion, that tends to support Plaintiff's assertions, the ALJ's step-three determination is supported by substantial evidence, and it must be affirmed.  *See Her v. Comm'r*, 203 F.3d at 389-90.  Therefore, Plaintiff's Motion should be denied with regard to this issue.

### 2.    *The ALJ's Assessment of the Medical Opinion Evidence*

Next, Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence, specifically that of his treating physician, Dr. Wright, consultative examiner Dr. Jack Salomon, and the non-examining medical experts, Dr. Barnes and Dr. Ghanayem.  (Docket no. 22 at 7-15.)

### a.    <u>Dr. Wright</u>

It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.   20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite

10

factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Plaintiff treated with Harold M. Wright, DO from October 2012 to April 2013. (TR 1552-71.) On April 25, 2013 and October 7, 2013, Dr. Wright completed substantially similar Medical Examination Reports with regard to Plaintiff, in which he opined that Plaintiff could lift

less than 10 pounds occasionally but never more than 10 pounds; stand and/or walk for less than 2 hours in an 8-hour workday, sit for less than six hours in an 8-hour workday; use his arms for simple grasping and reaching but never for pushing, pulling, or fine manipulating; and operate foot/leg controls. (TR 1592-94, 1945-47.)  Dr. Wright also opined that Plaintiff was limited in comprehension, memory, sustaining concentration, following simple directions, reading and writing, and social interaction. (*Id*.)  Dr. Wright then completed a Physical Residual Functional Capacity Questionnaire with regard to Plaintiff on July 10, 2015. (TR 1888-96.)  In this report, Dr. Wright opined that Plaintiff could occasionally lift less than 10 pounds but never more than 10 pounds; could sit or stand for only 10 minutes at time; could sit for less than 2 hours total in an 8-hour workday; could stand for less than 2 hours in an 8-hour workday; would need to walk around every 10 minutes in an 8-hour workday for 5 minutes each time; would need to take 20-30 minute breaks every 10-15 minutes; would need a cane to ambulate; would be incapable of performing even low stress jobs; and would never be able to twist, stoop, crouch, or climb ladders or stairs, among other things.

The ALJ summarized Dr. Wright's opinions and then assessed them as follows:

> The undersigned gives minimal weight to Dr. Wright's opinions for numerous reasons.  First, despite preparing the most recent disabling opinion in July 2015, the doctor admitted to not having seen the claimant since April 2013, or over two years prior (Exhibit B31F/1).  Moreover, the objective medical evidence in the record does not support the significant limitations proposed by Dr. Wright.  Most notably, the numerous MRI studies showed no more than mild-to-moderate degenerative findings, which is inconsistent with Dr. Wright's suggestions.

(TR 734.)

"A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)

(alteration in original) (quoting 20 C.F.R. § 404.1502).  Dr. Wright certainly qualified as Plaintiff's treating physician from October 2012 to April 2013; thus, his April 2013 opinion qualifies as that of a treating physician and is generally entitled to substantial deference.  Also, the undersigned concludes that his October 2013 opinion is not so far removed from the period of treatment to prevent it from being considered as a treating physician's opinion.  But, it is undisputed that Dr. Wright had not treated Plaintiff for over two years when he rendered his July 2015 opinion.  It would be inconsistent with the "ongoing treatment relationship" requirement of 20 C.F.R. § 404.1502 to treat that opinion as one authored by a treating physician.  *See Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012).  Accordingly, the ALJ properly discounted Dr. Wright's July 2015 opinion on this basis.

That being said, Dr. Wright's April and October 2013 opinions were entitled to controlling weight as long as they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Plaintiff argues that Dr. Wright's opinions are entitled to deference because Dr. Wright was well aware of Plaintiff's conditions and treatment, particularly the treatment that Plaintiff underwent to alleviate his pain. (Docket no 22 at 8.)  Plaintiff further argues that Dr. Wright's opinions are consistent with and were bolstered by the testimony of the non-examining medical expert, Dr. Ghanayem.  (*Id*. at 8-9.)  But Plaintiff's reliance on opinion evidence to support his argument in this regard does not defeat the ALJ's finding that Dr. Wright's opinions were inconsistent with the objective medical evidence, specifically, the results of Plaintiff's MRIs, which constitute substantial evidence in this matter.  The ALJ did not err in discounting Dr. Wright's April and October 2013 opinions as inconsistent with the mild-to-moderate MRI results.  Based on the discussion above, the

13

undersigned concludes that the ALJ provided good reasons for assigning little weight to Dr. Wright's opinions, which reasons are supported by the evidence of record and are sufficiently specific to clarify the reasons for that weight.   Plaintiff's Motion should be denied with regard to this issue.

b.   Dr. Salomon

Next, Plaintiff argues that the ALJ erred by assigning little weight to the opinion of consultative examiner Jack Salomon, M.D. and instead assigning great weight to the opinion of the non-examining medical expert, Dr. Barnes.  (Docket no. 22 at 9-10.)  Dr. Salomon conducted a physical evaluation of Plaintiff on July 2, 2013, with regard to Plaintiff's alleged disability.  (TR 1615-21.)  The parties do not dispute that Dr. Salomon was not a treating physician, as he only examined Plaintiff once on a consultative basis.  The ALJ is not bound by a non-treating physician's opinion.  *McKivens v. Comm'r*, No. 11-cv-14268, 2012 WL 3263847, at *11 (E.D. Mich. Jul. 9, 2012) (citation omitted).  However, "[w]hen no treating physician opinion has been granted controlling weight ... the medical opinion of a consultative examiner is to be weighed considering all of the factors identified in 20 C.F.R. § 404.1527(c)(1) through (6)." *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(iii)).  Nevertheless, there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c). *Norris v. Comm'r*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).

Upon examining Plaintiff, Dr. Salomon rendered the following assessment:  "Mr. Biestek probably has hepatitis C.  He has lumbar radiculopathy.  He may have some other problems also.  At this time, he is not very functional.  (TR 1617.)  The ALJ evaluated Dr. Salomon's assessment as follows:

14

> At the conclusion of the consultative examination, Dr. Salomon opined that the claimant was "not very functional" (Exhibit B23F/3). The undersigned gives little weight to Dr. Salomon's opinion, as he does not give specific functional limitations but merely makes a blanket statement. Moreover, Dr. Salomon only examined the claimant on one occasion, and thus, has no treating relationship with the claimant. Although Dr. Salomon found positive straight leg raising upon examination, the diagnostic findings on the various MRIs do not support the disabling statement from the examiner.

(TR 734.) Here, the ALJ appropriately considered and discussed some of the regulatory factors in weighing Dr. Salomon's assessment. And to the extent that Dr. Salomon's vague statement that Plaintiff is "not very functional" constitutes a medical opinion under the regulations, the ALJ's failure to adopt Dr. Salomon's "opinion" is harmless because it is patently deficient with regard to any functional limitations related thereto. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Nelson*, 195 F. App'x at 470. Moreover, Plaintiff does not allege any additional functional limitations that he believes the ALJ should have included based on Dr. Salomon's report. Therefore, Plaintiff's Motion should be denied in this regard.

### c.   Drs. Ghanayem and Barnes

First, with regard to Dr. Ghanayem, Plaintiff alleges that although the ALJ permitted Dr. Ghanayem to testify at the hearing regarding his previously-submitted written opinion, the ALJ erred by depriving Plaintiff of the ability to use Dr. Ghanayem as rebuttal evidence to the testimony of Dr. Barnes. (Docket no. 22 at 10-13.) Plaintiff relies on several authorities to support his argument: POMS § DI 27540.001; the Administrative Procedure Act (APA), 5 U.S.C. § 556(d); 20 C.F.R. § 404.929; 20 C.F.R. 404.950(a); and HALLEX I-2-6-60. POMS § DI 27540.001, however, is inapplicable to this matter, as it applies to proceedings in which the SSA plans to re-open the case of an individual who is already receiving disability benefits.

The APA provides that "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). As Defendant points out, however, this provision does not dictate the time and manner of rebuttal. (Docket no. 23 at 17.) In fact, the APA further provides that in determining claims for benefits, "an agency may, when a party will not be prejudiced thereby, adopt procedures for the submission of all or part of the evidence in written form." 5 U.S.C. § 556(d). Accordingly, Plaintiff's argument that he should have been able to present rebuttal evidence at the hearing through Dr. Ghanayem's testimony is not supported by the APA. Notably, there is no evidence that Plaintiff sought to present his rebuttal evidence in any other manner.

The social security regulations also do not support Plaintiff's argument. 20 C.F.R. § 404.929 provides that a claimant may present and question witnesses at the hearing before the ALJ, but it does not provide any guidance regarding rebuttal evidence. 20 C.F.R. § 404.950(a) states that any party to a hearing has a right to appear before the ALJ to present evidence and state his or her position. Again, this regulation does not specifically address rebuttal evidence. Notably, neither of these regulations specifies that an ALJ's decision to disallow rebuttal evidence at the hearing constitutes legal error.

HALLEX I-2-6-60, which governs the testimony of claimants and witnesses, provides, in relevant part, that

> The ALJ determines the subject and scope of testimony from a claimant and any witness(es), as well as how and when the person testifies at the hearing. . . . If a claimant or witness requests to testify in a particular way, or asks to testify at a particular time during the hearing, the ALJ will consider whether there is a good reason for the request. . . . If the ALJ does not grant the request, the ALJ will either deny the request in writing before the hearing (and exhibit the document) or deny the request on the record during the hearing. In either circumstance, the ALJ will explain the reason(s) he or she denied the request.

16

Plaintiff argues that the ALJ offered no reasons for denying his request to present Dr. Ghanayam as a rebuttal witness at the hearing. (Docket no. 22 at 12.) Plaintiff is incorrect. At the hearing, the ALJ informed Plaintiff's attorney that her procedure was to direct questions selected from a pre-approved list to the medical expert and then provide the attorney with the opportunity to ask that witness questions. (TR 881.) The ALJ advised that she would not engage in a discussion among professionals. (TR 881.) The ALJ's actions in this regard are consistent with HALLEX I-2-6-70, which governs medical expert (ME) testimony and provides that "[t]he claimant and the representative have the right to question the ME fully on any pertinent matter within the ME's area of expertise. However, the ALJ will determine when they may exercise this right and whether questions asked or answers given are appropriate." Accordingly, Plaintiff's argument fails in this regard.

Next, Plaintiff argues that the ALJ erred by only evaluating Dr. Ghanayem's opinion at step three of the sequential evaluation process and failing to make any mention of Dr. Ghanayem's opinion in the RFC determination. (Docket no. 22 at 13.) Plaintiff argues in this regard that Dr. Ghanayem explained in his letter opinion that Plaintiff's subjective complaints documented in the medical records were consistent with the nature of Plaintiff's condition and would render Plaintiff disabled. Plaintiff adds that Dr. Ghanayem testified at the hearing that statements of sitting or standing were reasonable and that the fact that Plaintiff needed to lie down or elevate his legs was entirely consistent with his pathology. Plaintiff argues that the ALJ's failure to mention this evidence warrants remand.

"[I]t is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v.*

17

*Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Here, the record demonstrates that the ALJ did in fact consider both the letter opinion and the testimony presented by Dr. Ghanayem, as she presided over the hearing at which Dr. Ghanayem testified, and she indicated at that hearing that she "really did understand [Dr. Ghanayem's] letter very clearly." (TR 883.) Thus, the ALJ's failure to explicitly discuss the evidence cited by Plaintiff above in the decision does not constitute reversible error. Furthermore, the ALJ sufficiently discussed her reasons for assigning little weight to Dr. Ghanayem's opinion at step-three of the sequential evaluation process, and her failure to repeat those reasons later in her decision was not erroneous.

With regard to Dr. Barnes, Plaintiff argues that the ALJ erred by assigning his opinion great weight while failing to account for all of the functional limitations he assessed in Plaintiff's RFC. (Docket no. 22 at 14-15.) There is only one limitation specifically assessed by Dr. Barnes that the ALJ did not incorporate fully into the RFC – that Plaintiff would not be able to bend over at the waist to pick up ten pounds. (TR 906.) But an ALJ is not required to adopt all of a non-examining source's findings, even if the ALJ gives the opinion great weight. *See Smith v. Comm'r of Soc. Sec.*, Case No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."). For the reasons stated above, Plaintiff's Motion regarding the ALJ's assessment of the medical opinion evidence should be denied.

3.     *The ALJ's Assessment of Plaintiff's Limitations in Concentration, Persistence, or Pace*

Plaintiff argues that the ALJ failed to adequately account for Plaintiff's moderate limitations in concentration, persistence, or pace in Plaintiff's RFC and in her hypothetical question to the VE.  (Docket no. 22 at 15-17.)  Specifically, Plaintiff argues that the ALJ's RFC and hypothetical question limiting Plaintiff to "simple, routine tasks" at the SVP 1 or 2 level essentially limited Plaintiff to unskilled work, and the skill level of a job does not necessarily relate to the difficulty an individual would have in meeting the demands of the job, including how quickly the individual could meet those demands.  (Docket no. 22 at 15-16.)  As Defendant points out, however, "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace."  (Docket no. 23 at 22 (quoting *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).)  *See also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted) (Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work.").

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation.  "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions."  *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted).  Courts are more likely to order a sentence-four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion

19

that found similar moderate deficiencies and indicated that the plaintiff was still capable of sustained work. *Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *4 (E.D. Mich. Nov. 28, 2011)).

Here, the ALJ did not make an independent decision regarding Plaintiff's ability to maintain concentration, persistence, or pace. In fact, the ALJ relied upon the opinion of Dr. Hugh Bray, Ph.D., LP in making such a determination. (TR 727 (citing TR 1624-26).) Dr. Bray conducted a consultative evaluation of Plaintiff's mental status on July 11, 2013, after which he found that Plaintiff's mental abilities to relate to others, to understand, remember, and carry out tasks, to maintain concentration, persistence, pace, and effort, and to withstand stress and pressure associated with day to day work activities were moderately impaired. (TR 1623-27.) Despite these findings, Dr. Bray opined that Plaintiff was able to perform simple, repetitive tasks and that he could likely handle more complex tasks, although he may have moderate difficulty in performing multiple-step tasks. (TR 1626.) Notably, Dr. Bray did not assess any additional functional limitations related to his findings, including the finding that Plaintiff had moderate limitations in maintaining concentration, persistence, or pace. The ALJ then discussed and assigned great weight to Dr. Bray's opinion, and incorporated the limitations assessed by Dr. Bray into Plaintiff's RFC by limiting him to work involving:

> simple, routine tasks such as those jobs at the SVP 1 or 2 level due to pain, fatigue, and depression causing occasional limitations in ability to maintain concentration for extended periods, but not off task for more than 10% of the workday, as well as occasional limitations in ability to carry out detailed instructions; . . . and [he] is limited to brief and superficial interaction (i.e. infrequent and not very involved) with the public, coworkers, and supervisors.

(TR 728, 733.)

The ALJ also relied upon and assigned great weight to the opinion of Dr. Edward Czarnecki, Ph.D., the non-examining state-agency consultant who made an unfavorable disability determination in this matter on July 23, 2013.  (TR 735, 953-68.)  In making that determination, Dr. Czarnecki assessed moderate difficulties in Plaintiff's ability to maintain concentration, persistence, or pace, yet he found that Plaintiff continued to retain the mental capacity for simple, rote, repetitive, unskilled work-related activity.  (TR 961, 966.)

The discussion above demonstrates that the ALJ relied upon and adopted the opinions of two medical sources that assessed Plaintiff's moderate difficulties in maintaining concentration, persistence, and pace, and found that Plaintiff was still able to engage in substantial gainful activity, albeit with limitations.  The ALJ then incorporated those limitations into Plaintiff's RFC and the hypothetical questions that she posed to the VE, to which the VE responded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (TR 855-62.)  There is no error here on the part of the ALJ, as the ALJ appropriately accommodated for Plaintiff's limitations in concentration, persistence, or pace in the RFC and the hypothetical questions.  It is therefore recommended that Plaintiff's Motion for Summary Judgment on this issue be denied.

### 4.    The ALJ's Credibility Assessment

Plaintiff asserts that the ALJ erred in assessing Plaintiff's credibility and in rejecting the statements of Plaintiff's mother, Rita Biestek.  (Docket no. 22 at 17-22.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination

21

must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[1] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree.  *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).   The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

---

[1] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016.  *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954.  Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p.  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.")

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and she found that Plaintiff's allegations were not entirely credible. (TR 729.) The ALJ explained this assessment as follows:

> In assessing the credibility of the claimant, the undersigned notes that the treatment for his various impairments were [sic] described as being relatively effective in controlling his symptoms. For instance, in January 2011, he reported that "Demerol help[ed] his pain" (Exhibit B13F/6). The claimant received bilateral medial branch blocks on April 6, 2011, and indicated that his pain level was 1/10 in severity (Exhibits B11F/27 and B20F/16). On January 20, 2012, he reported that physical therapy was helpful and that the injections provided at the prior office visit were "extremely beneficial" (Exhibit B17F/2). On May 22, 2014, the claimant reported that the back injections helped "some" (Exhibit B29F/6). The relative effectiveness of the treatment diminishes the credibility of the completely disabling allegations and supports a finding that he has been capable of performing work within the restricted range of sedentary work identified.

> At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant reported the following daily activities: reading the newspaper, preparing simple meals, visiting his son at least twice a week, driving, taking care of his basic needs on a consistent basis, doing some laundry, shopping, cashing checks, providing childcare, watching television, running errands, playing video games, and making appointments (Exhibits B14E, B5F, and B24F/2; testimony). These activities require functioning within the limited range of sedentary work identified.

> The undersigned also notes that the claimant has been noncompliant with prescribed treatment. Most notably, records from Hegira reflect numerous no shows and cancelations by the claimant (Exhibits B18F, B21F, B27F, and B28F). Moreover, as of June 18, 2014, he reported only using pain medications "once in a while as needed" (Exhibit B29F/4). The claimant's noncompliance with his treatment suggests that the symptoms may not be as limiting as the claimant has alleged in connection with this application and reflects poorly on the credibility of his allegations.

(TR 735-36.)

Plaintiff raises a few specific issues with regard to the ALJ's credibility analysis. First, Plaintiff claims that the ALJ's characterization of his treatment as "relatively effective" is flawed

and that the ALJ played doctor in making such a characterization.  (Docket no. 22 at 18-19; docket no. 25 at 7.)  Plaintiff's argument lacks merit, as the regulations specifically provide that the ALJ may consider the effectiveness of Plaintiff's treatment, as well as the intensity of his pain in determining the credibility of Plaintiff's disabling allegations.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  Plaintiff argues that the ALJ "cherry-picked" the evidence in this regard and points to instances in the record in which his treatment was not effective in controlling his symptoms.  (Docket no. 22 at 18-19.)  However, as Defendant points out, where there is evidence in the record that tends to support the positions of both parties, "the same process can be described more neutrally as weighing the evidence."  (*See* docket no. 23 at 24 (quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).)  Here, the ALJ properly cited to the evidence in the record that explains her reasons for finding Plaintiff's disabling statements to be not entirely credible in accordance with her duty to do so under SSR 96-7p.

Next, Plaintiff argues that the ALJ inappropriately characterized his daily activities, relying on the Sixth Circuit's decision in *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007) for the principle that minimal daily activities are not comparable to typical work activities.  (Docket no. 22 at 19-20.)  The ALJ, however, did not equate Plaintiff's daily activities to work activities; she discounted Plaintiff's disabling statements on the basis that Plaintiff's daily activities "require functioning within the limited range of sedentary work identified."  (TR 736.)  Moreover, the ALJ did not rely solely on Plaintiff's ability to perform daily activities in determining that Plaintiff is not disabled or in finding that Plaintiff's allegations were not entirely credible.  The ALJ relied on several items, such as the objective medical evidence, the medical opinion evidence, Plaintiff's daily activities, and Plaintiff's treatment, among other things.  The

ALJ's consideration of Plaintiff's daily activities is not error. To the contrary, the ALJ is required to consider Plaintiff's daily activities as part of her analysis.

Plaintiff also argues that the ALJ erred in discounting his credibility based on his non-compliance with treatment. (Docket no. 22 at 20-21.) To support his argument, Plaintiff cites Dr. Barnes's testimony that he did not find evidence of non-compliance in Plaintiff's file. (*Id*. at 21 (citing TR 904).) But the fact that Dr. Barnes did not find such evidence does not mean that it does not exist. The ALJ specifically identified the records of Plaintiff's numerous no shows and cancellations of his appointments at Hegira as evidence of this non-compliance. (TR 736.) In his brief, Plaintiff cites a lack of medical insurance for his failure to attend these appointments, but the record evidence does not necessarily support Plaintiff's allegation in this regard. (*See, e.g.,* TR 683, 699-700, 709-10, 1725, 1741, 1763, 1779.) The ALJ also cites to Plaintiff's June 18, 2014 report that he was only taking his pain medication as needed as evidence of Plaintiff's non-compliance with treatment. While this report does not necessarily reflect Plaintiff's credibility during the period at issue in this matter, the ALJ did cite to other evidence of Plaintiff's non-compliance with his medication during the relevant period. Specifically, the ALJ pointed out that on September 28, 2012, Plaintiff indicated that he was not telling the nurse practitioner about not taking his medication because he did not want to hurt his chances of getting SSI. (TR 732 (citing 1522).)

The immediate discussion demonstrates that the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and written statements in her decision, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and SSR 96-7p. Moreover, the ALJ supported her finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and

citing to several examples of inconsistency between Plaintiff's complaints and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed. Because the ALJ's determination that Plaintiff's statements were not entirely credible is supported by substantial evidence, her decision to assign little weight the statements made by Plaintiff's mother, Rita Biestek, on the basis that her statements were consistent with Plaintiff's statements is not erroneous. Plaintiff's Motion should be denied in this regard.

### 5.    The ALJ's Step-Five Determination

Plaintiff argues that the ALJ's step-five determination is not supported by substantial evidence because the VE's testimony upon which she relies appears to be "conjured out of whole cloth." (Docket no. 22 at 22 (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).) As Plaintiff points out, the VE based her testimony regarding off-task tolerance, the sit-stand option, the use of a cane, and the number of jobs available (issues not addressed by the Dictionary of Occupational Titles (DOT)), on her eleven-year experience as a vocational rehabilitation consultant, which included talking with employers, performing on-the-job analysis, and conducting her own individual labor market surveys. (Docket no. 22 at 23; TR 859, 865-66, 869-71.) After Plaintiff's attorney requested this evidence of the VE's experience, the VE explained that the job analyses were part of "people's private confidential files;" the ALJ then informed Plaintiff's counsel that she would not require the VE to produce the job analyses or the surveys and told counsel that he could appeal the issue if he so desired. (TR 865, 870.)

Plaintiff argues that the ALJ's acceptance and reliance upon the VE's testimony without any supporting evidence or verification of the VE's qualifications constitutes reversible error.

(Docket no 22 at 22-24.)  Plaintiff relies on Seventh Circuit precedent to support his argument in this regard, including *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) (quoting *Donahue,* 279 F.3d at 446) ("A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions.  'If the basis of the vocational expert's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable.'").  As Defendant points out, however, the Sixth Circuit has not adopted the Seventh Circuit precedent on which Plaintiff relies, and the Court will not do so here.

According to the law of this Circuit, an ALJ is entitled to "rely solely on the vocational expert's testimony," even where that testimony is not based on the DOT, but on the VE's professional experience. *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995); *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013).  *See also* SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (Evidence from VEs can include information obtained directly from employers or from a VE's own professional experience.).  "Moreover, '[n]othing in SSR 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'"  *Wilson v. Comm'r of Soc. Sec.*, No. 10-13828, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011) (quoting *Martin v. Comm'r of Soc. Sec.,* 170 F. App'x 369, 374 (6th Cir. 2006)).  Indeed, the ALJ is responsible for determining the credibility of the VE's testimony, and the ALJ's credibility findings are subject to substantial deference on review. *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  Here, the credibility of the VE's testimony was fully probed at the hearing in accordance with the law of

this Circuit, the VE testified that her testimony was based upon the DOT and her extensive experience as a vocational rehabilitation consultant, and the ALJ appropriately accepted and relied upon the VE's testimony on this basis.  Accordingly, the ALJ did not commit legal error here.

Plaintiff also argues that the VE's descriptions of the jobs available to Plaintiff do not exactly match the job descriptions of the DOT codes provided by the VE.  (Docket no. 22 at 25.)  Specifically, Plaintiff argues that the VE named the job associated with DOT code 713.687-018 as "bench assembler," but the actual title of this occupation as provided by the DOT is "final assembler," and while the VE named the job associated with DOT code 521.687-086 as "sorter," the actual job title under the DOT is "nut sorter."  (*Id*.)  Plaintiff's argument in this regard is undeveloped, as it fails to demonstrate that the VE's alleged misstatements amount to any cognizable error.  Furthermore, an ALJ "may rely on the testimony of the vocational expert even if it is inconsistent with the job descriptions set forth in the [DOT]."  *Conn*, 51 F.3d at 610 (citing *Basinger v. Sec'y of Health and Human Servs.,* 33 F.3d 54 (6th Cir. 1994)).

Plaintiff then questions whether the jobs cited by the VE even exist because the DOT descriptions for these occupations have not been updated since 1977.  (Docket no. 22 at 25.)  But while the DOT descriptions are not necessarily current, the Social Security Administration continues to rely primarily on the DOT for information about the requirements of work in the national economy in making disability determinations.  SSR 00-4P, 2000 WL 1898704, at *2. Therefore, the ALJ and the VE's reliance on the DOT in this regard was not erroneous.

Finally, Plaintiff argues that the ALJ erred by assigning little weight to the vocational opinion of Lee Knutson, which was purportedly obtained by Plaintiff's counsel in this matter. (Docket no. 22 at 24-25; TR 1296-98.)  Plaintiff's argument lacks merit.  Mr. Knutson opined

regarding occupations that are completely different from those which the ALJ found that Plaintiff can perform. (TR 1297.) The ALJ appropriately found that Mr. Knutson's opinion was irrelevant and assigned it little weight. Plaintiff's Motion regarding the propriety of the ALJ's step-five determination should be denied.

## VI.      CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 22) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 23).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated:  February 24, 2017            s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

       I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 24, 2017            s/ Lisa C. Bartlett
                                     Case Manager